IN  THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOSEPH ZEGGORY STANLEY, JR.,      *

Petitioner,                         *

  v.                           *         Civil Action No. GLR-14-2028

FRANK BISHOP and              *
THE ATTORNEY GENERAL OF
THE STATE OF MARYLAND,        *

Respondents.                 *

**MEMORANDUM OPINION**

Petitioner Joseph Zeggory Stanley, Jr., seeks habeas corpus relief pursuant to 28 U.S.C. § 2254, attacking the constitutionality of his 2009 convictions in the Circuit Court for Caroline County, Maryland.  (ECF No. 1).  Respondents were ordered to file an answer to the Petition and have done so.  (ECF No. 3).  Stanley filed a reply.  (ECF No. 5).  This matter has been fully briefed.  Upon review, the Court finds no need for an evidentiary hearing.  See Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts and Local Rule 105.6 (D.Md. 2016); see also Fisher v. Lee, 215 F.3d 438, 455 (4th Cir. 2000) (concluding that petitioner not entitled to hearing under 28 U.S.C. § 2254(e)(2)).  For reasons that follow, Stanley's Petition for writ of habeas corpus is denied and dismissed with prejudice.

I.       **BACKGROUND AND PROCEDURAL HISTORY**

On August 28, 2009, following a bench trial in the Circuit Court for Caroline County, Stanley was found guilty of first degree murder, second degree murder, armed robbery, use of a handgun in commission of a crime of violence, first degree assault, and theft of $500 or more. (ECF No. 1 at 2; ECF No. 3-1 at 7–9, 14–15).  He was sentenced on October 19, 2009 to life in prison and a consecutive term of fifteen years imprisonment.  (ECF No. 1 at 1; ECF No. 3-1 at

15).  Stanley filed a Notice of Appeal on October 20, 2009, alleging that the evidence was insufficient to support his convictions.  (ECF No. 1 at 2; ECF No. 3-1 at 15; ECF No. 3-2 at 2, 8).  In an unreported opinion filed on July 26, 2012, the Court of Special Appeals of Maryland affirmed Stanley's judgments of conviction.  (ECF No. 1 at 2-3; ECF No. 3-2).  Stanley filed a petition for writ of certiorari in the Court of Appeals of Maryland, which was denied in an order dated November 19, 2012.  (ECF No. 1 at 3; ECF No. 3-2 at 12).  He did not seek further review by the United States Supreme Court, nor has he filed for post-conviction relief in the circuit court.  (ECF No. 1 at 3).

Stanly filed the present federal Petition on June 13, 2014,[1] again challenging the sufficiency of the evidence.  (ECF No. 1).  On August 1, 2014, Respondents filed a Limited Answer.  (ECF No. 3).  Pursuant to the Court's August 6, 2014, Order, Stanley filed a Response to the Limited Answer on August 22, 2014.[2]  (ECF No. 4; ECF No. 5).

## II.     DISCUSSION

### A.     Standards for Threshold Considerations

#### 1.     Section 2254

Section 2254 states that a district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

---

[1] The Petition is dated June 13, 2014, and is deemed filed on that date.  See Houston v. Lack, 487 U.S. 266, 276 (1988) (concluding that pleadings are deemed filed on date prisoner relinquishes control over documents).

[2] See supra n.1.

**2.      Statute of Limitations**

A one-year statute of limitations applies to habeas petitions in non-capital cases for

persons convicted in state court.  See 28 U.S.C. § 2244(d)(1); Wall v. Kholi, 562 U.S. 545, 550

(2011).  Section 2244(d)(1) provides that:

> A 1-year period of limitation shall apply to an application for a
> writ of habeas corpus by a person in custody pursuant to the
> judgment of a State court.  The limitation period shall run from the
> latest of--
>
> > (A) the date on which the judgment became final by
> > the conclusion of direct review or the expiration of
> > the time for seeking such review;
> > (B) the date on which the impediment to filing an
> > application created by State action in violation of
> > the Constitution or laws of the United States is
> > removed, if the applicant was prevented from filing
> > by such State action;
> > (C) the date on which the constitutional right
> > asserted was initially recognized by the Supreme
> > Court, if the right has been newly recognized by the
> > Supreme Court and made retroactively applicable to
> > cases on collateral review; or
> > (D) the date on which the factual predicate of the
> > claim or claims presented could have been
> > discovered through the exercise of due diligence.

Pursuant to § 2244(d)(2), "[t]he time during which a properly filed application for State

post-conviction or other collateral review with respect to the pertinent judgment or claim is

pending shall not be counted toward any period of limitation under this subsection."   The

limitation period may also be subject to equitable tolling in appropriate cases.  Holland v.

Florida, 560 U.S. 631, 645 (2010); Harris v. Hutchinson, 209 F.3d 325, 329–30 (4th Cir. 2000).

### 3.      Exhaustion in State Court

The exhaustion doctrine, codified at 28 U.S.C. § 2254(b)(1),[3] "is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings.  Under our federal system, the federal and state courts [are] equally bound to guard and protect rights secured by the Constitution."  Rose v. Lundy, 455 U.S. 509, 518 (1982) (alteration in original) (internal citations and quotation marks omitted).  Moreover, "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation[.]"  Id.  Thus, the Rose Court cautioned litigants, "before you bring any claims to federal court, be sure that you first have taken each one to state court."   Id. at 520; see also O'Sullivan v. Boerckel, 526 U.S. 838, 839 (1999) ("Federal habeas relief is available to state prisoners only after they have exhausted their claims in state court.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: (1) "resulted in a decision that was contrary to, or involved an unreasonable

---

[3] Section 2254(b)(1) states that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>> (A) The applicant has exhausted the remedies available in the courts of the State; or
>> (B) (i) there is an absence of available State corrective process; or
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>> (C) An applicant shall not be deemed to have exhausted the remedies available in the courts of the state, within the meaning of this section, if he has the right under the law of the state to raise, by any available procedure, the question presented.

application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state adjudication is "contrary to" clearly established federal law under § 2254(d)(1) where the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." Williams v. Taylor, 529 U.S. 362, 405 (2000). Under the "unreasonable application analysis," a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough. v Alvarado, 541 U.S. 652, 664 (2004)). In other words, "a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." Renico v. Lett, 559 U.S. 766, 773 (2010).

Under section 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal court may not conclude that the state court decision was based on an unreasonable determination of the facts. Id. Further, "a determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B.**      <u>Analysis</u>

Stanley alleges that the evidence was insufficient to sustain his convictions.  (ECF No. 1 at 5).  Specifically, he argues that there was not sufficient evidence of agency with respect to him, no one identified him as the fleeing suspect, and there was no physical evidence linking him to the murder.  (<u>Id.</u> at 6).  Respondents contend that the Petition is time-barred and should be dismissed on that basis.  (ECF No. 3 at 1–2, 4).

The Court begins with the timeliness issue.  As noted above, "[t]he federal Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) establishes a 1-year statute of limitations for filing a federal habeas corpus petition."  <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 410 (2005) (citing 28 U.S.C. § 2244(d)(1)).  "That limitations period is tolled, however, while a 'properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending,'" <u>id.</u> (quoting 28 U.S.C. § 2244(d)(2)), and may otherwise be equitably tolled, <u>see</u> <u>Holland</u>, 560 U.S. at 645.

In this case, the Court of Appeals denied Stanley's Petition for Writ of Certiorari on November 19, 2012.  (ECF No. 3-2 at 12).  His conviction became final for direct appeal purposes on February 19, 2013, when the time for seeking review by the Supreme Court expired.  <u>See</u> Sup.Ct. Rule 13.1 (requiring that petition for writ of certiorari be filed within 90 days of the date of the judgment from which review is sought).  It is undisputed that Stanley has not filed an application for post-conviction relief in the circuit court.  (ECF No. 1 at 3, 5).  Therefore, no state filing tolled the limitations period.  Accordingly, the statute of limitations expired on February 19, 2014.  The Petition was filed almost four months later, on June 13, 2014.  Thus, the Court concludes that the Petition is time-barred.

In his Reply, Stanley acknowledges that the Petition is untimely.  (ECF No. 5 at 2).
However, he contends that the Court should not dismiss his petition as time-barred.  (Id. at 1).
Stanley makes two arguments in support of his position.

Although he does not use the term "equitable tolling," in essence, Stanley first argues that
the statute of limitations should be equitably tolled.  (Id. at 2–3).  The United States Court of
Appeals for the Fourth Circuit has consistently held that a party seeking to avail itself of
equitable tolling must show that (1) extraordinary circumstances, (2) beyond his control or
external to his own conduct, (3) prevented him from filing on time.  Rouse v. Lee, 339 F.3d 238,
246 (4th Cir. 2003)(en banc).  Further, to be entitled to equitable tolling a habeas petitioner must
show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary
circumstance stood in his way and prevented timely filing."  Holland, 560 U.S. at 649 (internal
quotation marks omitted)(quoting Pace, 544 U.S. at 418).

Stanley maintains that he has been pursuing his rights diligently.  (ECF No. 5 at 2–3).  He
notes that, under Maryland law, he has ten years in which to file for state post-conviction relief
and that he has been studying, researching, and reviewing statutes and case law "pertaining to his
post conviction issues."  (ECF No. 5 at 2).  As for the second requirement, Stanley states that:

> The extraordinary circumstance that stood in Petitioner's way to
> file a timely federal habeas petition was a complete lock'down at
> N.B.C.I. after a Correctional Officer was assaulted on August 5,
> 2013.  The institution remained on observation stages to normal
> operations until August 12, 2014.  Access to the prison library did
> not open until February 2014.

(Id. at 3); (see also id. at 2) (noting that during this time "no movement of any kind was
permitted," and that that he "could not get to the prison library nor [sic] any where else in the

institution.").⁴  Stanley further states that he did not have this Court's address, that no one was willing to assist him with the address, and that once he did get the address "he immediately sent his federal habeas petition to this Court."  Id. at 2.

There are two problems with Stanley's argument.  First, he does not account for the time period between  February 19, 2013, and August 5, 2013—over five months.  Second, Stanley does not state when in February of 2014 he regained access to the prison library.  If all he was missing was the Court's address, it is possible—although not certain—that he could have obtained the Court's address and mailed his Petition within the limitations period.  While "[t]he diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence," Holland, 560 U.S. at 653 (internal citations and quotation marks omitted), the Court cannot find that Stanley acted with reasonable diligence.  Therefore, the Court rejects Stanley's argument that he is entitled to equitable tolling.

Stanley next asks the Court, in its discretion, "to consider staying his federal habeas petition to allow Petitioner a reasonable time to present his post conviction issues."  (ECF No. 5 at 3) (citing Rhines v. Weber, 544 U.S. 269 (2005)).  In Rhines, the Supreme Court

> confront[ed] the problem of a "mixed" petition for habeas corpus relief in which a state prisoner presents a federal court with a single petition containing some claims that have been exhausted in the state courts and some that have not.  More precisely, we consider whether a federal district court has discretion to stay the mixed petition to allow the petitioner to present his unexhausted claims to the state court in the first instance, and then to return to federal court for review of his perfected petition.

---

⁴ It is unclear from Stanley's phrasing precisely when the prison resumed normal operations.  However, given that he is not "well versed in the English language," ECF No. 5 at 3, and construing the Petition liberally, see Estelle v. Gamble, 429 U.S. 97, 106 (1976), the Court assumes that the institution did not return to normal operations until August 12, 2014.

544 U.S. at 271-72.  The Court answered the question in the affirmative.  Id. at 276.

The Rhines Court cautioned, however, that stay and abeyance should be available only in

"limited circumstances."  Id. at 277.

> Because granting a stay effectively excuses a petitioner's failure to
> present his claims first to the state courts, stay and abeyance is
> only appropriate when the district court determines there was good
> cause for the petitioner's failure to exhaust his claims first in state
> court.  Moreover, even if a petitioner had good cause for that
> failure, the district court would abuse its discretion if it were to
> grant him a stay when his unexhausted claims are plainly meritless.

Id.  "And if a petitioner engages in abusive litigation tactics or intentional delay, the district court

should not grant him a stay at all."  Id. at 278.  Finally, the Court noted that mixed petitions

should not be stayed indefinitely, but be given reasonable time limits.  Id. at 277–78.

Here, Stanley's Petition is not a "mixed petition," containing both exhausted and

unexhausted claims.  The Petition contains a single ground for relief: the alleged insufficiency of

the evidence to sustain his conviction.  (Petition at 6).  Although the Supreme Court suggested in

Pace that the stay and abeyance procedure could apply to "unmixed," or "protective," petitions in

certain circumstances,[5] see 544 U.S. at 416, this is not one of those situations.  In this case, it is

---

[5] In Malvo v. Mathena, No. PJM 13-1863, 2017 WL 1326530 (D.Md. Apr. 11, 2017), the
Court stated that:

> In Pace—an opinion published just one week after Rhines—the
> Supreme Court suggested in dicta that a petitioner reasonably
> confused about whether a state filing would be timely could file a
> "protective" petition in federal court.  Pace, 544 U.S. at 416.  The
> habeas petition in Pace was an unmixed petition.  Id. at 410.
> Therefore, even though the Supreme Court did not explicitly state
> that the stay and abeyance procedure of Rhines applied to unmixed
> petitions, its suggestion that Rhines' stay and abeyance procedure
> could apply to an unmixed petition in that case clearly extended
> the Rhines rationale beyond mixed petitions.

Id. at *4; see also id. (noting that "multiple circuit courts—including the Fourth Circuit—have

unnecessary for the Court to stay Stanley's Petition in order to allow him to pursue his post-conviction remedies, because he has, in fact, already exhausted his federal claim in the state courts. Stanley raised the insufficient evidence allegation on direct appeal to the Court of Special Appeals and, after the appeal was denied, filed a petition for certiorari in the Maryland Court of Appeals. (See Petition at 2–3). Therefore, he has already given the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 845. Accordingly, the Court declines to stay the Petition.

Nonetheless, even if the Court were to apply equitable tolling to Stanley's claim, it would fail on the merits. In Jackson v. Virginia, 443 U.S. 307 (1979), the Supreme Court held that "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Id. at 324; see also id. at 319 (stating that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt").

The Court of Special Appeals summarized the facts of the case as follows:

> This case arises out of the murder and robbery of Maurice Stanley. As the victim and appellant share the same last name, we shall refer to the victim by his nickname, "T.T." Viewing the facts

---

cited the Supreme Court's opinion in Pace as precedent for applying the Rhines' stay and abeyance procedure to unmixed petitions"). The so-called "protective" petitions at issue in Malvo and Pace contained no exhausted claims but were "filed prior to the completion of the exhaustion process to ensure future rederal review." Id. (citing Pace, 544 U.S. at 416).

in a light most favorable to the State, the testimony and evidence admitted at trial showed that before the murder, in April 2008, appellant visited his cousin, Jolanda Darling, at her home in Camden, Delaware. During that visit, appellant first met Carl Hazzard, Darling's husband. He asked Hazzard if he knew anyone appellant could rob or if he had any guns for sale. As to both questions, Hazzard answered that he did not. Later, appellant asked Hazzard to participate in the robbery of a "major player" in Maryland, but Hazzard declined.

Sometime after that, approximately a week to a week and a half before appellant was ultimately arrested, Hazzard picked up appellant and a man known as "Bike Jones" from Delaware State University and gave them a ride to the Prospect Park area of Maryland. During the ride, appellant and Jones discussed a robbery they had just committed and showed Hazzard two guns they were carrying, a chrome 380 and a black Glock nine millimeter, the latter of which had an extended magazine. Hazzard dropped appellant and Jones off at an apartment complex and did not see appellant again until a "week or so" later.

On the night of May 5, 2008, appellant called his sister, Ebony Stanley, and asked her to pick him up in Harrington, Delaware. She drove with a man named "Fromante West," also known as "Truth" or "Monty," to Harrington and picked appellant up between 9 and 10 p.m. Driving the two men to an intersection between the Delaware border and Federalsburg, Maryland, she dropped them off and drove away.

That night, T.T. was at a home in a trailer park in Federalsburg, visiting his cousin Trerone Washington. Also at the home were Rydell Washington, Trerone's cousin, and Shauntell Robinson, Trerone's girlfriend. As he had done several times in the past, T.T. was visiting Trerone's home for the purpose of cooking cocaine to convert it into crack cocaine. Around midnight, T.T., after receiving $7,000 to $8,000 from Trerone, left Trerone's home to see his girlfriend, who was leaving work. When T.T. left, he had in his possession a black bag (containing drugs and money) and a white trash bag.

Shortly thereafter, Trerone, Shauntell, and Rydell heard gun shots. Trerone ran outside and saw T.T. lying on the ground. He yelled for Shauntell to call "911" and then ran to his shed to get a flashlight. As he was running towards the shed, he saw "two shadow figures" towards the back of T.T.'s truck. After retrieving his flashlight from the shed, Trerone saw a man in a white t-shirt running. He was carrying a white trash bag. Trerone could only see the man's silhouette, not his face. The man was "a heavy set

11

guy." Neither the black [bag] or white [trash bag] with which T.T. left the home were on the ground near where T.T. was shot.

Later, appellant called Hazzard and said he had some cocaine for him and was "anxious" to get to Delaware. When Darling got on the same phone, he requested that she pick him up in Maryland because "stuff came up." Appellant told Darling, "It's hot down here, I got to get away." The next day, she went to Harrington and picked up appellant, who was then in possession of a backpack and duffle-bag. The two returned to Hazzard and Darling's new home in Dover, Delaware. Appellant had with him a black bag, one and a half kilograms, or "bricks," of cocaine (wrapped in individual ounces), and $30,000. The next day, Hazzard helped appellant distribute the substance, and, during that time, Hazzard saw appellant give West 250 grams of cocaine and $10,000.

Sometime later, at Hazzard's house, a sheriff arrived to serve an eviction notice. Appellant hid some cocaine and a black and white purse on the roof of the house. After the sheriff left, Hazzard inquired as to why appellant was acting "paranoid" and wanted to know what was in the purse. Appellant showed Hazzard the contents of the purse, which included the Glock nine millimeter appellant previously possessed at Delaware State University, an extended magazine clip, a ski mask, and two black cotton gloves. Darling, who had seen the purse on the roof, after a neighbor directed her attention to it, asked Hazzard about it. He explained that it contained appellant's nine millimeter and an extended magazine clip.

Appellant explained to Hazzard, during several conversations, that T.T., a "major player," was murdered, and that appellant was being blamed for the murder even though he had not committed the murder. Appellant recounted how he and West had tried to rob T.T. at a trailer park, and that when T.T. refused to give information about the location of cocaine that had been shipped in from out-of-state, the situation "got rough[.]" After threats were made, T.T. pulled off the black ski mask appellant was wearing, and appellant spit on T.T. Appellant said that, even though he was armed with the Glock nine millimeter, it was West who actually shot T.T.

On May 11, 2008, appellant was arrested after the police found him in Hazzard and Darling's house following a raid. As appellant was being taken away by the police, he tried to communicate a message to Darling concerning what "was supposed to have been a bag" left at her house. Darling thereafter retrieved a bag of appellant's "clothes and stuff" that she then gave

12

to appellant's sister.  Later, Hazzard received a phone call that the police were at his house, and, sometime after the police left, he returned to the house and found $5,000 in the lint trap of his clothes dryer.

Approximately two weeks after appellant's arrest, Hazzard and Darling were traveling to Atlanta, Georgia, when they were stopped at a police checkpoint in South Carolina.  Because Hazzard did not have his driver's license, he was arrested and his vehicle was searched by the police.  In the vehicle, the police found the black and white purse that appellant had put on the roof of Hazzard and Darling's home.  Inside the purse, the police removed a Glock nine millimeter, an extended magazine clip, "a mask and two black gloves."  Ballistics testing later confirmed that bullets test fired from the Glock nine millimeter produced spent shells with markings that matched seven spent shells found at the scene of T.T.'s shooting.

During the investigation of the shooting, a New York Yankees baseball hat was recovered near where T.T. was shot.  At trial, the parties entered into a joint stipulation, which provided, among other things, that, with respect to the sweatband and a blood stain on the inside of the hat, an analyst would testify to a reasonable degree of scientific certainty that appellant was the major contributor of the DNA samples provided from the hat.  According to the stipulation, the statistical probability of an African-American, like appellant, producing a sample that would result in the same DNA profile was one in thirty-two quintillion.

Finally, after appellant was transferred from the Delaware authorities to the Dorchester County Detention Center, he made a variety of phone calls to various people, including his sister Ebony, West, and Delema Dixon Hopkins, the mother of appellant's former girlfriend.  In these calls, appellant instructed the others to go to Darling's house along with another man named "Aaron Flynn," and to find the drugs and money that he had hidden in the house behind the washer and dryer.  Appellant gave detailed instructions as to the location of Darling's house.  During the investigation of T.T.'s shooting, Sergeant Steven Hall, the lead investigator in the case, learned that appellant was in custody in Delaware.  After appellant was transferred to Maryland, the sergeant obtained copies of appellant's phone conversations and listened to them.  He subsequently interviewed Hopkins who admitted that she spoke with appellant on the phone, and she was going to show Ebony and others exactly where Darling's house was.  At trial, both Ebony and Hopkins confirmed that the phone conversations took place, and that, in accordance with appellant's

13

instructions, Hopkins was to show Ebony where Darling's house was located.  They also stated that in the phone conversations appellant had indicated that he left $30,000 somewhere in the house.

(ECF No. 3-2 at 2-7) (third alteration in original)(footnotes omitted).

The court next articulated the standard of review for sufficiency of the evidence, "'whether, after reviewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  <u>Id.</u> at 7 (quoting <u>Jackson</u>, 433 U.S. at 319).  The Court of Special Appeals thus properly relied on "clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), specifically <u>Jackson</u>.

In analyzing the evidence, the Court of Special Appeals stated:

> Preliminarily, we reject appellant's contention that West's independent act of shooting [T.T.] cannot be attributed to him as a principal to a murder because he was not charged with felony murder.  Appellant's first degree murder conviction was based on the claim that the murder was committed by West, in furtherance of the planned robbery of Maurice Stanley.  At the beginning of the trial, the State's Attorney advised the court that it was proceeding under the theory that the first degree murder was a felony murder in relation to the armed robbery of [T.T.].  In addition, in charging appellant, the State used the statutory short-form murder indictment which permits a conviction on any theory of murder, including felony murder.  <u>See e.g.</u>, <u>McMillan v. State</u>, 181 Md. App. 298, 353-54 (2008).
>
> We also reject his claim that the evidence was insufficient to support his convictions because neither witness identified him as the fleeing suspect, because there was no physical evidence such as a murder weapon, money, or drugs to connect him to the crime and because Hazzard's testimony was "uncorroborated and utterly unbelievable."
>
> There was ample credible evidence to support appellant's convictions.  Carl Hazzard testified that appellant confessed to him that he had participated in the robbery and murder of T.T. with Fromante West, and that they hoped to rob T.T. of large amounts

14

of drugs he was rumored to possess.  Hazzard further stated that appellant told him T.T. had resisted the robbery and pulled the ski mask off appellant's face, leading appellant to spit upon him and West to shoot him.  In addition, Hazzard testified that soon after the murder, his wife, Darling, picked up appellant from a location not far from the murder, and that appellant had with him a black bag containing a brick and a half of cocaine and $30,000.  When appellant later met with West, he gave West a quarter brick of cocaine from the black bag and $10,000.

The testimony of both Hazzard and Darling established that appellant possessed the handgun that was eventually linked to the murder of T.T. by ballistics evidence.  Even if, as appellant maintains, he was convicted solely on the basis of circumstantial evidence, it is well settled that "[c]ircumstantial evidence is entirely sufficient to support a conviction, provided the circumstances support rational inferences from which the trier of fact could be convinced beyond a reasonable doubt of the guilt of the accused[.]"  Hall v. State, 119 Md. App. 377, 393 (1998).  Thus, Hazzard's testimony was sufficient, by itself, to sustain appellant's convictions.

Even so, Hazzard's testimony was corroborated by numerous other witnesses, including Darling, Ebony Stanley, and Delema Hopkins.  Darling testified that appellant wanted to stay with her because he had "to get away" and that it was "hot down here" in Maryland.  She also testified that when she picked up appellant in an area near the site of the murder, appellant had a backpack and the duffle bag that Hazzard had described.  Further corroborating Hazzard's testimony, Ebony Stanley and Delema Hopkins stated that, after appellant was arrested, he called them and told them that he left $30,000 at Darling's house, and he wanted them, West, and another man to go to Darling's house to retrieve it.  In addition, Trerone Washington testified that T.T. left his trailer home with a black bag containing cocaine and $7,000 to $8,000.  Finally, Hazzard's testimony that appellant was accompanied by West was corroborated by Trerone Washington, who stated that he saw two people running away from the scene of the crime.

There was also physical evidence linking appellant to the robbery and murder.  Ballistics evidence confirmed that the Glock nine millimeter handgun that appellant left at Darling's house, and that was eventually seized from Darling's car, was the same gun used to shoot and kill T.T.  DNA evidence also connected appellant to the black baseball cap that was discovered in the vicinity of the murder.  For all these reasons, we conclude that the

15

evidence was sufficient to sustain appellant's convictions.

(ECF No. 3-2 at 9-11) (third and fourth alterations in original).

The appellate court thoroughly reviewed the evidence in the light most favorable to the State and fully considered the issue of sufficiency.  Jackson, 443 U.S. at 322 (noting that "if the state courts have fully considered the issue of sufficiency, the task of a federal habeas court should not be difficult").  The court's application of Jackson to the facts of the case was neither incorrect nor unreasonable.  See 28 U.S.C. § 2254(d)(1); Williams, 529 U.S. at 412–13.  A rational trier of fact clearly could have found guilt beyond a reasonable doubt.  Jackson, 443 U.S. 307 at 319, 324.

Moreover, although the trial transcript is not part of the record before this Court, it does not appear that the Court of Special Appeals' determination of the facts of the case was unreasonable.  See § 2254(d)(2).  The court addressed—and rejected—the particular allegations Stanley presents here, that there was insufficient evidence of agency to link him to the murder, he was not identified as the fleeing suspect, and no physical evidence connected him to the crime scene.  (ECF No. 3-2 at 9); (see also Petition at 6).  The state court's factual determinations are reflected in the court's detailed summary of the evidence presented at trial and are presumed to be correct.  28 U.S.C. § 2254(e)(1).  Stanley has not met his burden of rebutting the presumption of correctness by clear and convincing evidence.  Id.

Based on the foregoing, the Court concludes that the Court of Special Appeals' decision survives scrutiny under 28 U.S.C. § 2254(d) and denies the Petition.

**C.**     **Certificate of Appealability**

A Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); Buck v. Davis, __ U.S. __, 137 S.Ct. 759, 773 (Feb. 22, 2017) (citing Miller-El v. Cockrell, 537 U.S. 322, 336 (2003)). To meet this burden, an applicant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues were 'adequate to deserve encouragement to proceed further.'"  Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Stanley has failed to make a substantial showing that he was denied a constitutional right, and the court finds that reasonable jurists would not find the denial of habeas relief in this case debatable. Accordingly, a certificate of appealability shall not issue.[6]

### III.     CONCLUSION

For the above reasons, the court concludes that Stanley's Petition provides no basis for habeas corpus relief.  Accordingly, the Petition wil be DENIED and DISMISSED.  A separate Order follows.

Entered this 27th day of July, 2017

                                        /s/
                                        _____
                                        George L. Russell, III
                                        United States District Judge

---

[6] Denial of a Certificate of Appealability in the District Court does not preclude Stanley from requesting one from the Court of Appeals.